Anton C. Gerschler, CA sbn 098682
2305 Historic Decatur Rd., Suite 100
San Diego CA 92106
(619) 507-9411
Anton@Gerschlerlaw.com

Attorney for Plaintiffs Frances Melissa
Sedlmeier-Rosen and Helmut Karl Sedlmeier, Jr.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA -WESTERN DIVISION

| | |
|---|---|
| FRANCES MELISSA SEDLMEIER-ROSEN, HELMUT KARL SEDLMEIER, JR., INDIVIDUALLY AND AS HEIRS AND SUCCESSORS OF THE ESTATE OF HAYDEE MARIA SEDLMEIER, <br><br> Plaintiffs, <br><br> v. <br><br> NOVO NORDISK A/S, NORVO NORDISK, INC, NOVO NORDISK NORTH AMERICA OPERATIONS A/S, NOVO NORDISK US HOLDINGS INC, NOVO NORDISK US COMMERCIAL HOLDINGS INC, NOVO NORDISK RESEARCH CENTER SEATTLE, INC., NOVO NORDISK PHARMACEUTICAL INDUSTRIES LP; <br><br> Defendants, and, <br><br> v. <br><br> FELIPE SEDLMEIER, <br><br> Nominal Defendant. | Case No. <br><br> **COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL DAMAGES; DEMAND FOR JURY TRIAL** <br><br> **(DIVERSITY ACTION)** |

COME NOW the Plaintiffs FRANCES MELISSA SEDLMEIER-ROSEN and HELMUT KARL SEDLMEIER, JR.  (referred to hereinafter collectively as "Plaintiffs") and allege upon information and belief as follows.

///

- 1 -
COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL DAMAGES; DEMAND FOR JURY TRIAL

1. At all times pertinent to this action, Plaintiff FRANCES MELISSA SEDLMEIER-ROSEN was and remains presently a resident and citizen of the State of California.

2. At all times pertinent to this action, Plaintiff HELMUT KARL SEDLMEIER, JR. was and remains presently a resident and citizen of the State of Arizona.

3. Decedent HAYDEE MARIA SEDLMEIER (referred to hereinafter as the "Decedent") died in Los Angeles, California on April 12, 2024, leaving no surviving spouse, children, or parents, and designating by will said Plaintiffs as the co-executors of her estate.

4. Said Plaintiffs are lawful heirs of the Decedent within the meaning of California Code of Civil Procedure section 377.60(a) are thus entitled to commence this wrongful death action individually under California law.

5. As Decedent's successors in interest, said Plaintiffs are entitled to commence this survival action brought on behalf of the Decedent's estate pursuant to California Code of Civil Procedure section 377.30.  (See Declaration of Successors In Interest filed concurrently herewith and incorporated herein by this reference as though set forth in full.)

6. Plaintiffs are informed and believe that Decedent's surviving adult half-brother Felipe Sedlmeier has opted out of pursuing any litigation related to Decedent's passing and is therefore named herein as a nominal or ostensible defendant solely for the purpose of giving him notice of this action and to judicially confirm his non-participation in the single action for wrongful death and other relief sought by Plaintiffs herein.

7. Defendant NOVO NORDISK A/S is a Danish public limited liability company wholly owned by the Novo Nordisk Foundation and operating in the United States of America through Novo Nordisk, Inc., among other entities.

8. Defendant NOVO NORDISK, INC. is a corporation organized under the laws of the State of Delaware with its principal place of business (nerve center) located at 800 Scudders Mill Road, Plainsboro, New Jersey and wholly owned by Defendant NOVO NORDISK US HOLDINGS INC.  For diversity purposes, NOVO NORDISK, INC is therefore a citizen of Delaware and New Jersey. (See, *Hertz Corp. v. Friend*, 559 U.S. 77 (2010).)

///

9. Defendant NOVO NORDISK NORTH AMERICA OPERATIONS A/S is a public limited company organized under the laws of Denmark with a principal place of business in Bagsværd, Denmark.

10. Defendant NOVO NORDISK US HOLDINGS INC. is a privately held corporation wholly owned by Defendant NOVO NORDISK A/S.

11. Defendant NOVO NORDISK US COMMERCIAL HOLDINGS INC. is a Delaware corporation with a principal place of business at 103 Foulk Road, Ste. 282 Wilmington, Delaware.

12. Defendant NOVO NORDISK RESEARCH CENTER SEATTLE, INC. is a Delaware corporation with a principal place of business at 800 Scudders Mill Road, Plainsboro, New Jersey.

13. Defendant NOVO NORDISK PHARMACEUTICAL INDUSTRIES LP is a Delaware corporation with a principal place of business at 3611 and 3612 Powhatan Road, Clayton, North Carolina.

14. Plaintiffs are informed and believe and requests the parties and the Court to take mandatory judicial notice that in other proceedings, NOVO NORDISK INC and NOVO NORDISK A/S have stipulated that they "will not claim, assert, or acquiesce to the position that other Novo Entities are a reasonable party or liable party in [said other proceeding], and to the extent a jury were to place any percentage of responsibility on the other Novo entities, Novo Nordisk, Inc and Novo Nordisk A/S assumes that liability." (See, Case 2:24-md-03094-KSM, ECF 161, Document 294 filed November 13, 2024.)

15. All related Novo entities are referred to hereinafter jointly and severally as "NOVO NORDISK" and each of the NOVO NORDISK Defendants was the agent, employee, or other legal representative of the NOVO NORDISK Defendants, and in doing the things alleged below, was acting at all material times within the course and scope of such agency, employment or other legal relationship with the other NOVO NORDISK Defendants' actual and implied permission, consent, authorization and approval.

///

///

- 3 -
COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL DAMAGES; DEMAND FOR JURY TRIAL

16. This Court has original jurisdiction under 28 U.S.C. §1332(a) because this is a civil action between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

17. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and circumstances giving rise to Plaintiffs' claims occurred in Los Angeles County, California, including all pertinent medical treatment, all prescriptions and administration of medications (including Ozempic), as well as being the place of Decedent's pre-death residence, pre-death employment, the place of Decedent's passing, her autopsy her cremation and her memorial services.

## FACTUAL ALLEGATIONS

18. While living, Plaintiffs' Decedent's treating physicians prescribed and she took the glucagon-like peptide-1 receptor agonist (GLP-1 RA) semaglutide products marketed, supplied, promoted, advertised, packaged, labeled, sold, distributed by the NOVO NORDISK defendants under various brand names including Ozempic for the treatment of her Type 2 diabetes.

19. Medications within the GLP-1 RA class of drugs are intended to mimic the activities of physiologic GLP-1, a gut hormone that binds to receptors throughout the body and, notably, activates GLP-1 receptors in the pancreas to stimulate the release of insulin and suppress glucagon.

20. At the time of Decedent's passing on April 12, 2024, she was a 63 year-old female who had been admitted to the UCLA Santa Monica Medical Center on or about March 27, 2024 with a prior history including juvenile rheumatoid arthritis and diabetes.

21. The causes of death listed by the County of Los Angeles Department of Public Health Certificate of Death no. 320241901987898 states the immediate cause of death as septic shock, with underlying causes stated as bowel perforation, gastroenteristis and diabetes mellitus type II.

22. The Medical Examiner's autopsy report case no. XXX-24-XXXX5 dated April 15, 2024 describes the initial diagnosis as enteritis and partial small bowel obstruction that progressed to acute enteritis with obstruction, perforation and bowel ischemia requiring ileocecectomy complicated by distributive shock and metabolic acidosis, resulting in acute enteritis, necrosis, fibrinous peritonitis, focal mucosal pseudopolyps and septic shock resulting in death.

22. The Medical Examiner's report states, "Of note, the patient [i.e., Decedent] was taking Ozempic, a glucagon-like peptide receptor agonist (GLP-1RA)", identifying Ozempic as a possible contributing factor, further noting that, "In one large study…patients taking this class of drugs have a 3.5-fold increased risk of intestinal obstruction. Accordingly, the Food and Drug Administration (FDA) updated its labeling of the drug Ozempic to include blocked intestine as a potential side effect of this drug." (See, Faillie J.L., Yin H., Yu O.H.Y., Herrero A, Altwegg R., Renoux C., et al, *Incretin-based Drugs and Risk of Intestinal Obstruction Among Patients with Type 2 Diabetes*. Clin Pharmacol Ther. 2022; 111:272-282.)

23. Plaintiffs allege upon further information and belief that Ozempic was a substantial factor (legal cause) of the Decedent's death, for which the NOVO NORDISK Defendants, in collaboration amongst themselves, as part of their business, designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and/or distributed FLP-1 RA's, including Ozempic.

24. On or about October 19, 2008, NOVO NORDISK filed an Investigational New Drug application for Ozempic (semaglutide).

25. On or about December 5, 2016, NOVO NORDISK announced submission of a New Drug Application ("NDA") 209637 to the FDA for regulatory approval of once-weekly injectable semaglutide, a new glucagon-like peptide-1 (GLP-1) medication for treatment of type 2 diabetes. In the announcement, NOVO NORDISK represented that in clinical trials "once-weekly semaglutide had a safe and well tolerated profile with the most common adverse event being nausea" and the approval was given by the FDA that same day.

26. On or about May 28, 2021, NOVO NORDISK submitted sNDA 209637/S-009, requesting approval for a higher 2 mg dose of Ozempic (semaglutide) injection, and on or about March 28, 2022, the FDA approved sNDA 209637/S-009 for a higher-dose Ozempic 2 mg injection for increased glycemic control in adults with type 2 diabetes.

27. Thereafter, NOVO NORDISK began advertising, marketing, sales, and distribution of Ozempic without giving diabetes patients or physicians treating diabetic patients, any warning of ileus (bowel blockage), ischemic bowel, intestinal sepsis, intestinal necrosis and other serious and dangerous intestinal conditions as potential adverse reactions to the active ingredient in Ozempic,

and that NOVO NORDISK either knew or in the exercise reasonably diligent investigation and testing ought to have known of these harmful, even potentially fatal effects involving decreased intestinal motility.

28. On or about September 22, 2023, NOVO NORDISK added "ileus" under Section 6-3 Postmarketing Experience of the Prescribing Information ("PI" or "label") in a revised Ozempic label. The new label listed ileus as an adverse reaction reported during post-approval use of semaglutide, the active ingredient of Ozempic, but NOVO NORDISK continued to downplay the chronic nature, duration and severity of gastrointestinal injuries caused by the active ingredient in Ozempic to the population of doctors and patients by then inculcated to the concept of Ozempic being an essential lifelong maintenance therapy.

29. In an October 5, 2023 peer-reviewed Research Letter published in the Journal of the American Medical Association ("JAMA"), the authors examined gastrointestinal adverse events associated with GLP-1 RAs used for weight loss in clinical setting and reported that use of GLP-1 RAs compared with use of bupropion-naltrexone was associated with increased risk of pancreatitis, gastroparesis, and bowel obstruction. The study found that patients prescribed GLP-1 RAs were at 4.22 times higher risk of intestinal obstruction and at 3.67 times higher risk of gastroparesis. (See, Mohit Sodhi, *et al.*, *Risk of Gastrointestinal Adverse Events Associated with Glucagon-Like Peptide-1 Receptor Agonists for Weight Loss*, JAMA (published online October 5, 2023), available at https://jamanetwork.com/journals/jama/fullarticle/2810542.

30. The medical literature listed above is not a comprehensive list, and numberous other case reports and studies published prior to the Decedent's passing have indicated that GLP-1 RAs can cause gastroparesis and impaired gastric emptying, ileus, intestinal obstruction, and their sequelae.

31. Defendants knew or in the exercise of reasonable investigatory, monitoring, testing, tracking and other requisite due diligence should have known of the clearly established causal association between the use of GLP-1 RAs and the risk of patients developing gastroparesis, ileus, intestinal obstruction, and their dangerous sequelae, but they ignored the causal association, and thereby failed to provide physicians prescribing Ozempic and patients taking Ozempic with a "fair

balance" of information about drug risks as compared with information about drug benefits. (See, https://www.fda.gov/drugs/prescription-drug-advertising/drug-advertising-glossaryterms#:~:text=The%20law%20requires%20that%20product,Generic%20Name)

32. To the contrary, through sophisticated marketing techniques (called an Omnichannel marketing scheme) Defendants influenced prescribing physicians and Ozempic patients to ignore known risks of their drug. As far back as 2012, NOVO NORDISK discussed the use of algorithms, noting that "[t]he algorithm is able to determine the patient's therapeutic readiness to initiate therapy, determine if they're looking for a change in product, if they just need more help and support in adhering to the therapy they're on. That's a game changer." (See, *Patient Marketing Report: From A1C to Z* - MM+M - Medical Marketing and Media (mmmonline.com)

33. Defendants had a legal duty to exercise reasonable care in designing, researching, testing, manufacturing, marketing, supplying, promotion, advertising, packaging, labeling, sale and/or distribution of their GLP-1 RA products into the stream of commerce, including a duty to assure that the GLP-1 RA Products would not cause users to suffer unreasonable, dangerous side effects.

34. At all relevant times, Defendants failed to exercise ordinary care in the design, research, testing, manufacture, labeling, warnings, marketing, promotion, quality assurance, quality control, sale and/or distribution of their GLP-1 RA products in that Defendants knew or should have known that the drugs could be a substantial factor (legal cause) of the injuries and resulting death of Plaintiffs' Decedent, and/or presented an unreasonably high risk of injuries and death.

35. Defendants' GLP-1 RA products were expected to and did reach the usual users and/or consumers, handlers, and persons coming into contact with said products without substantial change in the condition in which they were produced, manufactured, sold, distributed, and marketed by Defendants.

36. Defendants knew or should have known that consumers such as Plaintiffs' Decedent would foreseeably suffer injuries or death as a result of their negligent or other failure to provide adequate warnings, as set forth herein.

37. At all relevant times, given their increased safety risks, Defendants knew or in the exercise of reasonable diligence ought to have known that their GLP-1 RA products were not fit for the ordinary purposes for which they were intended.

**EQUITABLE TOLLING OF STATUTES OF LIMITATIONS**

38. Defendants are estopped from relying on the statute of limitations defense because Defendants actively concealed information concerning known risks, side effects, and defects in the GLP-1 RAs. Instead of revealing such information to the FDA or the public, Defendants have continued to misrepresent the GLP-1 RA products as safe for their intended use.

39. Under these circumstances, Defendants are and were under a continuing duty to disclose the true character, quality and nature of risks and dangers associated with their GLP-1 RA products. Because of Defendants' purposeful concealment of material information concerning the true character, quality and nature of risks of such products, Defendants are estopped from relying on any statute of limitations defense.

**CAUSES OF ACTION**

**COUNT I**
**FAILURE TO WARN – NEGLIGENCE**
**(AGAINST ALL NOVO NORDISK DEFENDANTS)**

40. Plaintiffs incorporate by this reference all other paragraphs, preceding and succeeding, in their entirety as though set forth in full here and throughout.

41. Said Defendants had legal duties and breached their legal duties to exercise reasonable care in designing, researching, testing, manufacturing, marketing, supplying, promotion, advertising, packaging, labeling, sale and/or distribution of their GLP-1 RA products into the stream of commerce, including a duty to assure that the GLP-1 RA products would not cause users to suffer unreasonable, dangerous side effects, and to the extent that such dangerous side effects were known or reasonably knowable to these Defendants, to exercise exercise ordinary care in the design, research, testing, manufacture, labeling, warnings, marketing, promotion, quality assurance, quality control, sale and/or distribution of their GLP-1 RA products to adequately warn Plaintiffs' Decedent and her treating physicians of the unreasonably high risk of injuries posed by said products, and to

///

conduct reasonable postmarketing surveillance and/or warnings of the known or knowable true risks of serious side effects, including death.

42. Defendants' GLP-1 RA Products were expected to and did reach the usual users and/or consumers, handlers, and persons coming into contact with said products without substantial change in the condition in which they were produced, manufactured, sold, distributed, and marketed by Defendants.

43. At all relevant times, and at the times the GLP-1 RA products left Defendants' control, Defendants knew or should have known that their GLP-1 RA products were unreasonably dangerous because they did not adequately warn of the increased risks of ileus, gastroenteritis, ischemia, bowel perforation and other intestitinal blockage posing the foreseeable risk of serious injury and death.

44. Despite the fact that Defendants knew or should have known that their GLP-1 RA products caused unreasonably dangerous injuries, Defendants continued to market, distribute, and/or sell their GLP-1 RA products to consumers, including Plaintiffs, without adequate warnings to prescribing physicians, including Plaintiffs' prescribing physicians, and without adequate warnings to the consumers themselves.

45. Defendants knew or in the exercise of reasonable care should have known that consumers such as Plaintiffs' Decedent would foreseeably suffer injuries (including death) as a result of their failure to provide adequate warnings, as set forth herein.

46. At all relevant times, given their increased safety risks, Defendants' GLP-1 RA products were not fit for the ordinary purposes for which they were intended.

47. At all relevant times, given their increased safety risks, Defendants' GLP-1 RA products did not meet the reasonable expectations of an ordinary consumer, particularly Plaintiffs' Decedent.

48. At all relevant times, Plaintiffs' Decedent was using Defendants' GLP-1 RA products as prescribed for the purposes and in a manner normally intended.

///

///

COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL DAMAGES; DEMAND FOR JURY TRIAL

49. By reason of the foregoing, Defendants have become liable to Plaintiffs for the designing, marketing, promoting, distribution and/or selling of their unreasonably dangerous GLP-1 RA products.

50. As a direct and proximate result of one or more of the foregoing acts and omissions Plaintiffs and Plaintiffs' Decedent also suffered consequential economic and noneconomic losses, including pain and suffering, loss of a normal life, loss of life, medical expenses, lost income, funeral and memorial expenses, wrongful death damages, legal costs and attorneys fees in amounts according to proof at trial.

**COUNT II**
**FAILURE TO WARN -STRICT LIABILITY**
**(AGAINST ALL NOVO NORDISK DEFENDANTS)**

51. California State Law imposes a duty on said Defendants as producers, manufacturers, distributors, lessors, and sellers of a product to exercise all reasonable care when designing, researching, manufacturing, producing, distributing, leasing, selling their dangerous products and surveilling the performance of said products in the marketplace.

52. Defendants breached that duty and as the direct and proximate result of one or more of the foregoing acts and omissions Plaintiffs and Plaintiffs' Decedent also suffered consequential economic and noneconomic losses, including pain and suffering, loss of a normal life, loss of life, medical expenses, lost income, funeral and memorial expenses, wrongful death damages, legal costs and attorneys fees in amounts according to proof at trial.

**COUNT III**
**BREACH OF IMPLIED WARRANTY**
**(AGAINST ALL NOVO NORDISK DEFENDANTS)**

53. At all relevant times, said Defendants impliedly warranted to Plaintiffs' Decedent, and Decedent's prescribing physicians, and the medical community in general that Defendants' GLP-1 RA products were of merchantable quality and safe and fit for their ordinary purposes.

54. At all relevant times, said Defendants knew or should have known that their GLP-1 RA products were unreasonably dangerous and breached that warranty.

55. As the direct and proximate result of said breach, Plaintiffs and Plaintiffs' Decedent also suffered consequential economic and noneconomic losses, including pain and suffering, loss of a

normal life, loss of life, medical expenses, lost income, funeral and memorial expenses, wrongful death damages, legal costs and attorneys fees in amounts according to proof at trial.

## COUNT IV
## UNFAIR TRADE PRACTICES
## (AGAINST ALL NOVO NORDISK DEFENDANTS)

56. Said Defendants not only had a duty of reasonable care to avoid causing harm to those That consumed it, such as Plaintiffs' Decedent, but also separate and independent statutory duties to be truthful, fair, accurate, and to not mislead or deceive consumers in connection with the sale of GLP-1 RA products.

57. Said Defendants engaged in unfair competition or unfair, deceptive, misleading, false, fraudulent, and/or unconscionable acts or practices in violation of the applicable state consumer protection statutes including California Civil Code section 1750, *et seq*. when they misled consumers regarding the safety risks associated with use of their GLP-1 RA products, by overstating benefits and understating risks from using the products.

58. As a direct and proximate result of such unfair, deceptive, misleading, false, fraudulent, or unconscionable acts or practices by Defendants, Plaintiffs and Plaintiffs' Decedent suffered consequential economic and noneconomic losses, including pain and suffering, loss of a normal life, loss of life, medical expenses, lost income, funeral and memorial expenses, wrongful death damages, legal costs and attorneys fees in amounts according to proof at trial.

## COUNT V
## NEGLIGENT DESIGN
## (AGAINST ALL NOVO NORDISK DEFENDANTS)

59. Said Defendants are liable to Plaintiffs for the injuries and damages sustained due to Defendants' negligent design and/or formulation of their GLP-1 RA products and as a direct and proximate result of said negligence, Plaintiffs and Plaintiffs' Decedent consequential economic and noneconomic losses, including pain and suffering, loss of a normal life, loss of life, medical expenses, lost income, funeral and memorial expenses, wrongful death damages, legal costs and attorneys fees in amounts according to proof at trial.

///

///

## COUNT VI
### STRICT LIABILITY DESIGN DEFECT
### (AGAINST ALL NOVO NORDISK DEFENDANTS)

60. Said Defendants are strictly liable to Plaintiffs for the injuries and damages sustained due to Defendants' dangerous design and/or formulation of their GLP-1 RA products and as a direct and proximate result of said negligence, Plaintiffs and Plaintiffs' Decedent consequential economic and noneconomic losses, including pain and suffering, loss of a normal life, loss of life, medical expenses, lost income, funeral and memorial expenses, wrongful death damages, legal costs and attorneys fees in amounts according to proof at trial.

## COUNT VII
### NEGLIGENCE
### (AGAINST ALL NOVO NORDISK DEFENDANTS)

61. Said Defendants had a duty to exercise reasonable care in the designing, researching, testing, manufacturing, marketing, supplying, promotion, advertising, packaging, labeling, sale and/or distribution of their GLP-1 RA products, including the duty to take all reasonable steps necessary to manufacture, promote, and/or sell a product that did not cause users to suffer from unreasonable, dangerous side effects without an adequate warning.

62. Said Defendants breached that duty and as a direct and proximate result of said negligence, Plaintiffs and Plaintiffs' Decedent consequential economic and noneconomic losses, including pain and suffering, loss of a normal life, loss of life, medical expenses, lost income, funeral and memorial expenses, wrongful death damages, legal costs and attorneys fees in amounts according to proof at trial.

## COUNT VIII
### WRONGFUL DEATH
### (AGAINST ALL NOVO NORDISK DEFENDANTS)

63. Plaintiffs, as Decedents' lawful heirs, are empowered by California Code of Civil Procedure section 377.60 to commence and do hereby commence this action seeking monetary compensation for the wrongful death of their Decedent provided for by Code of Civil Procedure section 377.61 including economic damages for lost financial support, loss of gifts or benefits, funeral, burial and memorial expenses, and for the noneconomic damages of lost love, companionship, comfort, care, assistance, protection, affection, society, moral support and loss of

Decendent's training and guidance actually and proximately caused by said Defendants' wrongful acts in amounts according to proof at trial.

### COUNT IX
### SURVIVAL ACTION
### (AGAINST ALL NOVO NORDISK DEFENDANTS)

64. Plaintiffs, as Decedent's successors in interest, are empowered by California Code of Civil Procedure section 377.30 to commence and do hereby commence this action on behalf of Decedent's estate seeking monetary compensation for the Decedent's pre-death pain and suffering, loss of enjoyment of life, medical expenses of final illness, loss of income and other damages recoverable under said statute that were actually and proximately caused by said Defendants' wrongful acts in amounts according to proof at trial.

### COUNT XIII
### DECLARATORY RELIEF
### (AGAINST NOMINAL DEFENDANT FELIPE SEDLMEIER ONLY)

65. Plaintiffs seek a judicial determination that Nominal Defendant FELIPE SEDLMEIER has been given adequate notice of the pendency of this action and has voluntarily abandoned and/or waived all legal claims for financial compensation arising directlly or indirectly from the facts and circumstances of Decedent's passing as set forth herein.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against the NOVO NORDISK Defendants on each of the above referenced claims and causes of action Count I through Count XII, awarding compensatory damages in excess of $75,000, including, but not limited to

    (a)    Plaintiffs' and Plaintiffs' Decedent's economic and non-economic damages including pain, suffering, discomfort, physical impairment, emotional distress, loss of enjoyment of life, loss of life, medical expenses, out of pocket expenses, lost earnings, wrongful death, and survival action damages, all in amounts to be determined at trial of this action;

    (b)    Pre-judgment interest;

    (c)    Post-judgment interest;

    (d)    Reasonable attorneys' fees;

    (e)    Costs of suit; and,

COMPLAINT FOR WRONGFUL DEATH AND SURVIVAL DAMAGES; DEMAND FOR JURY TRIAL

1  (f) Such other and further relief as this Court deems just and proper under the circumstances.

**JURY DEMAND**

TAKE NOTICE that Plaintiffs demand trial by jury as to all issues herein.

Dated: December 31, 2025                    Respectfully submitted,

/s/ *Anton C. Gerschler*
_____
Anton C. Gerschler
Attorney for Plaintiffs FRANCES MELISSA SEDLMEIER-ROSEN and HELMUT KARL SEDLMEIER, JR. as Heirs an Successors of the ESTATE OF HAYDEE MARIA SEDLMEIER

-o0o-